## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CAROL A. STANDEN,**<br>              **Plaintiff** | **:**     **No. 3:11cv1988** |
|  | **:** |
| **v.** | **:**     **(Judge Munley)** |
|  | **:** |
| **GERTRUDE HAWK CHOCOLATES, INC.,**<br>              **Defendant** | **:** |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court for disposition is defendant's motion to dismiss the plaintiff's amended complaint.  (Doc. 18).  The motion has been briefed and is ripe for disposition.

**Background**

Carol A. Standen ("plaintiff"), a fifty-one year-old female, is suing her former employer Gertrude Hawk Chocolates, Inc. ("defendant").  (Doc. 15, Am. Compl. at 1).  She was employed as a Packaging Equipment Technician with the Maintenance Department at defendant's facility located in Dunmore, Pennsylvania from 1992 until her resignation.  (Id. at 1-2).  Plaintiff alleges she was forced to resign following six weeks of medical leave under the Family and Medical Leave Act ("FMLA") beginning November 2008.  (Id. at 1-2; ¶ 77).  She contends that over the course of a four year period she suffered severe sexual harassment and retaliation for her complaints about the sexual harassment, which ultimately led to her forced resignation.  (Id. at 2).

Plaintiff alleges that she was sexually harassed by three supervisors:

"Black,"[1] Philip Calachino ("Calachino") and Jim Pope ("Pope").  She also claims defendant retaliated against her based on her complaints to defendant's Human Resources department.  Plaintiff alleges that Black continually made sexual comments and physically touched her despite her repeated requests for him to stop.  (Id. ¶¶ 23-37).  He subjected plaintiff to such behavior on several occasions, specifically on February 2004, Easter 2004, October 2004 and February 2006.  (Id. ¶ 23).  Black would lift his nose and make a sniffing noise when plaintiff walked by as if to sniff her body.  (Id. ¶¶ 40-41).  He would continually come up behind plaintiff, rub his groin area against her or pin his body against hers.  (Id. ¶¶ 26, 33-34, 35-36).  In 2006, Black lifted plaintiff's hairnet and put his tongue inside her ear.  (Id. ¶¶ 37, 113).  Plaintiff always objected to the touching and remarks and would push Black away.  (Id. ¶ 29).

Between 2004 and 2008, plaintiff informed her immediate supervisor Calachino of the unwanted contact with Black.  (Id. ¶¶ 22, 30).  Specifically after the incident with Black in 2006, plaintiff met with Calachino and informed him that she would seek legal counsel if the unwanted sexual contact did not stop.  (Id. ¶¶ 37-38).  Calachino, however, also harassed plaintiff by touching her inappropriately and suggesting they meet outside of work to engage in sexual activity.  (Id. ¶¶ 60-61, 67).

Plaintiff also endured harassment from her supervisor Pope.  Pope made suggestive remarks to plaintiff and suggested that they meet in a trailer.  (Id. ¶¶ 46, 47, 48).  On July 16, 2005, Pope approached Skip Standen, plaintiff's husband, who at the time was her fiancé, and stated "I

---

[1] Plaintiff did not indicate "Black's" first name and the record does not contain his first name.

hope you don't mind, I am going to make it hard on your girlfriend," over a conveyor belt issue.  (Id. ¶ 68).  On another occasion, Skip Standen said to Pope, "[I]t's a shame certain people can't stop riding Carol's ass and just let her do her job."  (Id. ¶ 69).  Pope replied, "I'd like to ride her ass and not about work!"  (Id.)  Plaintiff explains that there were several incidents where Pope sexually harassed plaintiff and created a hostile environment.  (Id. ¶ 45).

During her encounters with Black, Calachino, and Pope, plaintiff expressed her disapproval with the sexual conduct, continually told them to stop and often felt compelled to physically remove herself from the situation.  (Id. ¶¶ 22, 28-30, 32-38, 42, 61, 67).  Plaintiff alleges that she brought complaints through the defendant's chain of command and was retaliated against for her allegations of sexual harassment.  (Id. ¶¶ 17, 43-44, 79).  In accordance with the employee handbook, plaintiff made complaints about the harassment to her immediate supervisor Calachino, her then second level supervisor Matt Zelewski ("Zelewski"), the Human Resource Manager Garton, the Vice President of Manufacturing Marcia Dian and the Chief Executive Officer David Hawk.  (Id. ¶¶ 17-21, 79-80).  Plaintiff claims that none of the male employees were subjected to any similar offensive conduct, nor was there any consequences for male employees committing such acts.  (Id. ¶ 90).

Although plaintiff routinely made complaints pursuant to company policy, defendant's management failed to provide plaintiff with any relief.  (Id. ¶¶ 17-21, 79-80).  Plaintiff claims that she met with Garton dozens of times and she did not receive a single act of resolution.  (Id. ¶¶ 81, 82).  Plaintiff brought her complaints to Garton on or about Easter 2004,

3

October 20, 2004, March 24, 2005, July 15, 2005, November 15, 2005, February 6, 2006, April 6, 2006, June 30, 2008, August 25, 2008, August 28, 2008, September 3, 2008, November 3, 2008 and November 11, 2008. (Id. ¶ 21).  Garton often responded with comments such as, "Oh Carol, you know how guys are," "It's a factory, that's how guys are," "Carol, come on, it's just Jim [Pope]," or "Don't even go there," suggesting that, but for her gender, she would be free from defendant's workplace discrimination.  (Id. ¶¶ 86-87).

Plaintiff claims that as a result of her internal complaint of sexual harassment she was labeled as a trouble maker and "head case" by managers, supervisors and co-workers.  (Id. ¶ 43).  Black reported plaintiff for being out of her area and accused her of having nothing to do.  (Id. ¶ 44).  Plaintiff claims that this was done so that she would be subjected to ridicule and potential discipline in retaliation for her complaints and refusal to submit to Black's sexual demands and comments.  (Id.)

In 2004, plaintiff claims she was retaliated against by her then second level supervisor, Zelewski.  (Id. ¶¶ 63-66).  At a meeting with Zelewski, plaintiff informed him that she would have to seek recourse with Human Resources if he could not arrive at a resolution regarding her sexual harassment complaints.  (Id. ¶ 63).  He told plaintiff to leave his name out of any Human Resource reports and stated, "I can solve this problem right now, you shut your face or I'll put you right back on the line." (Id. ¶ 64).  Plaintiff understood Zelewski's statement as a threat of downgrade in retaliation for her complaints.  (Id. ¶¶ 65-66).

Plaintiff also claims she was laid off by Calachino over a slow summer period in the summer of 2005 before an associate of lesser

4

seniority.  (Id. ¶¶ 50-51).  Plaintiff protested the lay off and stated that she was going to Human Resources, as she was not the lowest in seniority. (Id. ¶ 51).  Plaintiff also alleges that in the summer of 2008, Pope was scheduled to be laid off.  (Id. ¶ 54).  However, Garton gave Pope of list of "important" tasks that needed to be taken care of so that Pope had to remain on the job.  (Id.)

Plaintiff further claims that Skip Standen was fired in April 2009 in retaliation for her complaints to management.  (Id. ¶ 74).  At the time of his layoff, Skip was told by Human Resources that he would be called back to work soon.  In October 2009, however, Skip received a letter from defendant telling him that his responsibilities were permanently eliminated. (Id. ¶ 75).

In her final effort to resolve the harassment, plaintiff submitted her written "last chance" complaint to Chief Executive Officer David Hawk on November 11, 2008.  (Id. ¶¶ 17, 144).  When Mr. Hawk visited plaintiff's work station that day, plaintiff personally informed him of the inappropriate sexual behavior of her supervisors and that she did not know how much more she could take.  (Id. ¶ 169).  Mr. Hawk stated that he was unaware of the situation, but would certainly look into it.  (Id. ¶ 170).  That afternoon, plaintiff was called to Garton's office for a conference where Garton and Calachino were present.  (Id. ¶¶ 171).  During the meeting, plaintiff recalled an incident occurring earlier that week where Calachino changed plaintiff's work shift as a result of plaintiff taking vacation time.  (Id. ¶¶ 166-68, 173). In response to plaintiff's recollection, Calachino began swearing and was eventually removed from the meeting, which ended without a resolution as to plaintiff's complaints.  (Id. ¶¶ 173-76, 179).

5

Ultimately, plaintiff explains that she endured all she could and went on FMLA leave in November 2008.  (Id. ¶ 72).  While on leave, plaintiff began seeking treatment for her psychological injuries.  (Id. ¶¶ 71-73).  Plaintiff was diagnosed with depression and anxiety.  (Id. ¶ 78).  She was instructed by her physician not to return to her position with defendant.  (Id. ¶ 145).  Plaintiff resigned.

Plaintiff alleges she initiated a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  (Id. ¶ 2). She obtained a right-to-sue letter from EEOC on or about August 28, 2011.  (Id. ¶ 10; see Doc. 30).  Plaintiff filed the complaint in this court on October 25, 2011.  (Doc. 1).  Upon agreement of counsel, plaintiff filed a motion for leave to file an amended complaint, which was granted on March 27, 2012.  (Docs. 14, 16).

On February 21, 2012, plaintiff filed an amended complaint, which contains three counts.  (Doc. 15).  Count I alleges sexual harassment in violation of Title VII.  Count II asserts a claim of retaliation in violation of Title VII.  Count III is brought pursuant to the Pennsylvania Human Relation Act ("PHRA").  Defendant filed the instant motion to dismiss/strike the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) on April 13, 2012.  (Doc. 18).  The parties fully briefed the motion.  An oral argument on defendant's motion was held on July 31, 2012 (Doc. 29), bringing the case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to Title VII, 42 U.S.C. § 2000e-2(a)(1), the court has jurisdiction pursuant to 28 U.S.C. § 1331

("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of a complaint's allegations.  Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted).  "[T]he factual detail in a complaint [cannot

be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).  "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, "we are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).

To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**Discussion**

Defendant raises several arguments in support of its motion to dismiss/strike plaintiff's amended complaint: (1) failure to exhaust administrative remedies; (2) failure to state a cause of action upon which relief may be granted for retaliation; (3) the PHRA claims should be stricken; (4) the amended complaint should be stricken; (5) the statements regarding plaintiff's husband are irrelevant and should be stricken; and (6)

8

plaintiff's claim for punitive damages should be dismissed.  We will address each argument, in turn.

## 1.  Failure to exhaust administrative remedies

Defendant argues that plaintiff failed to exhaust her administrative remedies by timely filing an EEOC charge within 300 days of the last discriminatory act.[2]  Defendant claims that plaintiff alleged that the last act of sexual discrimination occurred in August 2008.  She did not file an EEOC charge until August 28, 2009, more than 300 days after the last alleged discriminatory act.  Therefore, her claim should be dismissed for failure to exhaust.

Plaintiff agrees with defendant that the EEOC charge was filed with the EEOC on August 28, 2009.[3]  However, she asserts that the last act of discrimination occurred in November 2008, thus within 300 days from the filing of her EEOC charge.  She also asserts that her claims should survive the defendant's motion to dismiss pursuant to the "continuing violation doctrine" set forth by the Supreme Court in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002).  Plaintiff contends that her EEOC claim was timely and there was a linkage between all the acts that occurred and contributed to the hostile work environment.  Plaintiff also

---

[2]  We construe defendant's argument as directed towards plaintiff's Title VII claim.  Defendant primarily addresses the Title VII administrative remedies in its argument and asserts a separate section in its brief as to why the PHRA claim should be dismissed due to failure to exhaust administrative remedies.

[3] In plaintiff's amended complaint, she alleges that she filed an EEOC charge on or about April 2009.  (Doc. 15, Am. Compl. ¶ 2).  However, at oral argument, plaintiff's counsel conceded that the complaint was filed on August 28, 2009.  (Doc. 29, Tr. at 15).

provided the court a copy of her right-to-sue letter from the EEOC.  (Doc. 30).

Both Title VII and the PHRA require a claimant to exhaust administrative remedies prior to instituting a cause of action.  Burgh v. Borough Council of Montrose, 251 F.3d 465, 469 (3d Cir. 2001).  A discrimination charge must be filed with the EEOC within 180 days after the last alleged unlawful employment practice, or if cross-filing with a parallel state agency, 300 days from the last unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); Burgh, 251 F.3d at 472.  Pennsylvania is a deferral state with such a state agency.  See Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000).  "The purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'"  Webb v. City of Phila., 562 F.3d 256, 262 (3d Cir. 2009) (quoting Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)).  The parameters of a civil action are generally set by the scope of the EEOC investigation and the claims that could reasonably be expected to grow out of the charge.  Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976).  "The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII."  Burgh, 251 F.3d at 470 (citation omitted).

In considering whether plaintiff in the instant case has properly exhausted her administrative remedies, we must address two issues raised by the parties: (1) when the last act of discrimination occurred; and (2) whether plaintiff filed an EEOC charge within 300 day of that act.  Under

the first issue, defendant argues that plaintiff does not state any facts to suggest that additional discriminatory conduct occurred after August 31, 2008, therefore that is the last alleged date.  Plaintiff claims that the last act occurred on November 11, 2008.  We agree with plaintiff.

On November 11, 2008, plaintiff alleges that she told Chief Executive Officer Dave Hawk about the sexual harassment, that it was intolerable and that she did not know how much more she could take.  (Doc. 15, Am. Compl. ¶ 169).  Later that day, plaintiff was called into Garton's office. Garton began by asking plaintiff, "What's the problem?"  (Id. ¶ 172). Plaintiff repeated the details involving plaintiff's shift change.  (Id. ¶¶ 166-68, 173)   Calachino became enraged, jumped from his seat and screamed at plaintiff.  (Id. ¶ 173).  "Calachino began ranting how Plaintiff went over his head to Dave Hawk."  (Id. ¶ 174).  He screamed that plaintiff was nuts and told Garton to get her out of his department.  (Id. ¶ 175).  He also stated that plaintiff has hot flashes and is crazy.  (Id.)  It appears from plaintiff's amended complaint that during the meetings on November 11, 2008, she provided management with "one last chance" to remedy the discrimination.  They failed to do so, prompting her to take medical leave. (Id. ¶ 144).

In construing the facts in favor of plaintiff, we find that Calachino's statements during plaintiff's meeting with Garton relate to plaintiff's sexual harassment and retaliation claims and that this incident is an act that contributed to the alleged hostile work environment.  We conclude that based on plaintiff's allegations in the amended complaint, November 11,

2008 constituted the last act of discrimination.[4]

Next, we also find that plaintiff timely filed an EEOC charge within 300 days of the last discriminatory act.  Plaintiff alleges that she cross-filed her complaint with the PHRC and the EEOC charge indicates that it was filed with both the EEOC and the PHRC.  (See Doc. 24, Ex. 1, Charge of Discrimination at 1).  Therefore, she had 300 day from the last discriminatory act to file a charge with the EEOC, rather than the shorter 180 day deadline.   See 42 U.S.C. § 2000e-5(e)(1); Burgh, 251 F.3d at 472.  Plaintiff's EEOC charge is notarized on August 28, 2009 and stamped as received by the EEOC on August 31, 2009.  (Doc. 24, Ex. 1, Charge of Discrimination at 1).  We find that 300 days from November 11, 2008 would be September 7, 2009.  Thus, plaintiff timely filed her EEOC complaint in August 2009.  Plaintiff also properly exhausted her administrative remedies, which is indicated by her receipt of a right-to-sue letter from the EEOC prior to instituting this suit.  See Burgh, 251 F.3d at 470.  Accordingly, we will deny defendant's motion to dismiss the complaint for failure to exhaust her administrative remedies under Title VII.

Additionally, because plaintiff timely filed an EEOC charge within the appropriate deadline and alleges a hostile work environment, the preceding discriminatory incidents may be actionable under the continuing violation theory.  The Supreme Court found in National Railroad Passenger Corporation v. Morgan, that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory

---

[4] Plaintiff's EEOC charge also states that the date of the most recent or continuing discrimination took place on November 11, 2008.   (Doc. 24, Ex. 1, Charge of Discrimination at 1).

12

time period, is permissible for purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." 536 U.S. 101, 105 (2002). We agree with defendant that the application of the continuing violation doctrine is not particularly relevant to our analysis of whether plaintiff's claims were administratively exhausted. We simply note that plaintiff sufficiently pled the application of the doctrine for the inclusion of events that happened prior to the last discriminatory act as being a part of one hostile work environment claim.

**2.  Failure to state a cause of action upon which relief may be granted for retaliation**

Defendant claims that plaintiff failed to state a claim for retaliation. First, defendant argues that the allegations in the amended complaint were not raised in the EEOC filing, thus the claim cannot be raised in the instant suit. Second, defendant contends that plaintiff failed to demonstrate that she was constructively discharged, as she does not argue that she was forced out of a job, but that more than two months after her supervisor screamed at her, she took medical leave. Defendant argues that plaintiff merely claims that she was threatened with adverse action, which is insufficient under the retaliation and constructive discharge claims.

Plaintiff asserts that her claims are within the scope of the EEOC charge. She argues that her retaliation and constructive discharge claims impose a burden on the defendant to show a legitimate, non-retaliatory reason for his adverse employment action. She must only demonstrate that the action would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Plaintiff additionally claims that after

13

she provided management "one last chance" to remedy the problem, she was entitled to quit.

The anti-retaliation provision of Title VII prohibits an employer from discriminating against an employee because "he has opposed any . . . unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a). To assert a prima facie case for retaliation, plaintiff must demonstrate the following: (1) she engaged in activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted). "[W]here unlawful retaliation is claimed, the plaintiff need only show that an action is 'materially adverse' in that it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 348 (quoting Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). The anti-retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington, 548 U.S. at 64.

The court analyzes retaliation claims under the McDonnell Douglas framework. Moore, 461 F.3d at 342. If the plaintiff is able to establish a prima facie case of retaliation, then "'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Id. (quoting Krouse v.

14

Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997)).   However, when considering a motion to dismiss an employment discrimination claim, the Twombly plausibility standard applies.  Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008) (extending the Third Circuit holding in Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) to the employment discrimination cases and finding that "[t]he plausibility paradigm announced in Twombly applies with equal force to analyzing the adequacy of claims of employment discrimination."). Therefore, at a motion to dismiss stage, the court must only determine whether plaintiff has pled "enough facts to raise a reasonable expectation that discovery will reveal evidence" of plaintiff's retaliation claim.  Phillips, 515 F.3d at 234.  In the instant case, we find that plaintiff's amended complaint meets that burden.

Initially, we dismiss defendant's argument that retaliation allegations were not raised in plaintiff's EEOC filing and are thus time-barred.  As stated above, the parameters of a civil action are generally set by the scope of the EEOC investigation and the claims that could reasonably be expected to grow out of the charge.  Ostapowicz, 541 F.2d at 398-99.  In plaintiff's timely EEOC "Charge of Discrimination," there are two boxes checked for the cause of discrimination: sex and retaliation.  (Doc. 24, Ex. 1, Charge of Discrimination at 1).  "The particulars" contains a statement from plaintiff that is similar to the allegations in the amended complaint. She stated that as a result of her complaints her husband was terminated, she was threaten with transfer, suffered lay off and held to a completely different set of rules for overtime and shift coverage.  (Id.)  She also explicitly stated that her complaints caused her employer to retaliate

against her.  (Id. at 2).  Based on these statements, we will deny defendant's argument that the retaliation allegations were not raise in her EEOC filing or any argument that the present allegations in the amended complaint are outside of the scope of the EEOC charge.

In determining whether plaintiff sufficiently pled a retaliation claim, first, we find that plaintiff alleges that she engaged in protected activity by making complaints to Human Resources about the sexual harassment. The Third Circuit has found that protected activity covers not only a formal filing of an EEOC charge, but also informal protests, such as complaints to management.  Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006) (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir.1990)).  "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII[,]" as the complaint must, specifically or by context, "identify the employer and the practice[.]"  Id.  Thus, by making her complaints of sexual harassment to defendant through supervisors, Human Resources and the CEO Dave Hawk, plaintiff engaged in protected activity.

Second, plaintiff sufficiently pled adverse action.  Plaintiff alleged that after complaining about the sexual harassment she was laid off before another employee of lesser seniority, held to a different standard for overtime and shift coverage, threatened with transfer and downgrade, forced to take medical leave and otherwise constructively discharged. (Doc. 15, Am. Compl. ¶¶ 146-48).  Plaintiff also alleges that after she told Calachino she was going to get a lawyer if the harassment did not stop, plaintiff was labeled as a trouble maker and "head case."  (Id. ¶ 149).  We find that these allegations are sufficient to support a claim that a

16

reasonable person would have been persuaded not to make or support a discrimination charge.

We also find that plaintiff sufficiently pled a claim for constructive discharge.  "A plaintiff who advances such a [hostile-environment constructive discharge] claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." Pa. State Police v. Suders, 542 U.S. 129, 147 (2004).  "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." Id. at 141.

Here, plaintiff sufficiently pled that the conditions were unendurable. She claims that she was constantly harassed, despite her request for the statements and behavior to stop.  She sought help from management and Human Resources without resolve.  Plaintiff alleges that the harassment took its toll on her and she began to feel helpless and dreaded going to work.  (Doc. 15, Am. Compl. ¶ 71).  She claims that she endured all she could and went on medical leave in November 2008.  (Id. ¶ 72).  At this stage in litigation, we find that plaintiff sufficiently alleged a constructive discharge claim.

Finally, in support of her retaliation claim, we find that plaintiff alleged a sufficient casual link between her complaints of sexual harassment and the alleged adverse action.  Some of the comments made to plaintiff are directly related to plaintiff's complaints to Human Resources.  In 2004, plaintiff alleges that she was threatened with downgrade after informing her supervisor Zelewski of the sexual harassment.  (Id. ¶¶ 63-66).  Plaintiff alleges that she was labeled as a trouble maker and "head case" by

manager, supervisors and co-workers due to her complaints.  (Id. ¶ 43).
In 2005, plaintiff alleged that she was laid off before an associate of lesser
seniority and told that if she went to Human Resources she was on her
own "with no help from anybody."  (Id. ¶ 52).  It is difficult to establish a
clear timeline of plaintiff's complaints and alleged adverse action because
the amended complaint does not provide any clear chronological account
of the events.  In construing the facts in favor of the plaintiff, we find that
plaintiff alleged a sufficient link between the protected activity and the
adverse action.  We will deny defendant's motion to dismiss plaintiff's
retaliation claim.

### 3.  The PHRA claims should be dismissed

Plaintiff and defendant stipulated to the dismissal of plaintiff's state
law claim under the PHRA.  (Doc. 29, Tr. at 14-15).  Therefore, defendant's
motion is granted as to plaintiff's PHRA claim.

### 4.  Plaintiff's complaint should be stricken[5]

Defendant claims that plaintiff's complaint should be dismissed for
failure to state a claim for sexual harassment in violation of Title VII.
Defendant argues that the statements made about plaintiff are not
discriminatory on their face, nor has plaintiff offered any support that they
were made because of her sex.  It also argues that the alleged statements
and complaints of sexual harassment were insufficient to create a hostile

---

[5]  Defendant titles this section in its brief "Plaintiff's Complaint Must
Be Stricken."  A motion to strike is covered by Rule 12(f).  Defendants
argue, however, for the dismissal of plaintiff's Title VII claim by contending
that plaintiff failed to state a claim.  Therefore, we will analyze the
arguments contained in this section under Rule 12(b)(6), failure to state a
claim, rather than Rule 12(f), motion to strike.  We find that this is
consistent with the defendant's argument.

work environment.

Plaintiff submits that she sufficiently pled a hostile work environment claim, arguing that she only needs to prove that the environment was hostile, intimidating, or offensive.  She also asserts that the conduct was sexual in nature and "because of sex," as the comments made to her were about her clothing, sexual attractiveness, martial status or the harassers' desire to engage in sexual relations with plaintiff.  Additionally, she argues that she alleged facts to support each of the factors considered in determining the existence of a hostile work environment.

Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  One method of proving a violation of Title VII is to show that sexual harassment created a hostile work environment.  Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999) (citation omitted). The elements of a hostile work environment claim against an employer are: "(1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability."  Hutson v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001)).  *Respondeat superior* means notice to the employer, not vicarious liability.  Kunin, 175 F.3d at

293 n.5.

To establish a hostile work environment claim, "the offending behavior 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Pa. State Police, 542 U.S. at 146-47 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).   However, "[t]o make out a case under Title VII it is only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff had been a man she would not have been treated in the same manner." Andrews v. City of Phila., 895 F.2d 1469, 1485 (3d Cir. 1990) (internal quotations and citations omitted).

"'[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Again, at this motion to dismiss stage, we must only determine whether plaintiff has pled "enough facts to raise a reasonable expectation that discovery will reveal evidence" of each element of her Title VII sexual harassment claim.  Based on this standard, we find that plaintiff has sufficiently pled her claim and we will deny defendant's motion to dismiss.

First, we find that the comments and behaviors directed toward plaintiff were based on plaintiff's sex.  They were sexual in nature and made reference to plaintiff's physical appearance.  Her alleged harassers touched her in a sexually suggestive manner and referenced sexual

20

activity.  Black would repeatedly come up behind plaintiff and rub his groin area against her.  (Id. ¶ 26).  Black insisted that plaintiff walk up the stairs in front of him and then touched her from behind while asking, "Do you like that?"  (Id. ¶¶ 27-28).  Calachino told plaintiff, "Come on Carol, I'll have you come before you get your pants off."  (Id. ¶¶ 60-61).  In July 2008, Pope entered plaintiff's work area and grabbed his crotch while saying, "Come in the back with me, I'll see what I can give you."  (Id. ¶ 47).  In October 2008, he invited plaintiff to a trailer to give him "something to raise [his] pipe."  (Id. ¶ 48).  We find that these statements are directly related to plaintiff's sex.  Furthermore, plaintiff also alleges that if she were a man, she would not have been treated in the same manner.  See Andrews, 895 F.2d at 1485.  None of the male employees were subjected to any similar offensive conduct, nor was there any consequences for male employees committing such acts.  (Id. ¶ 90).  In response to her complaints to Human Resource Manager Garton, he would say "Oh, Carol, you know how guys are," or "It's a factory, that's how guys are."  (Id. ¶ 49).

Second, we find that the circumstances alleged in plaintiff's amended complaint sufficiently demonstrate that the behaviors were pervasive and regular.  Plaintiff claims the male employees would constantly make comments and continued despite her request for them to stop.  (Id. ¶¶ 25, 29, 38).  She complained of the conduct for several years prior to her last day of work, making numerous complaints to Human Resources Manager Garton of the frequent unwanted and unwelcome sexual attention.

Third, plaintiff asserts that she was detrimentally affected by the comments and that they were taking a psychological toll on her and her personal life.  She contends that a reasonable person would also be

21

offended by the statements and physical touching.  (Id. ¶ 137).  Finally, plaintiff alleges that she put her employer on notice by her complaints to supervisors, Human Resources and the CEO of Gertrude Hawk Dave Hawk.

By evaluation of the relevant factors and consideration of the totality of the circumstances, we also find that plaintiff has sufficiently alleged a hostile work environment.  Plaintiff alleges that the harassing comments and touching were frequent and severe.  She was physically touched by Calachino when he grabbed her waist and told her that she lost weight. (Id. ¶ 93).  She explains that she felt trapped and threatened.  (Id.)  Plaintiff claims that she often felt compelled to physically remove herself from the situation.  (Id. ¶¶ 35, 41, 61, 67).  Plaintiff asserts that the unwelcome sexual attention and sexual conduct unreasonably interfered with her work performance.  (Id. ¶ 135).

Based upon plaintiff's allegations in the amended complaint and a consideration of the relevant law, we find that plaintiff sufficiently alleged a sexual harassment claim and we will deny defendant's motion to dismiss.

**5.  The statements regarding plaintiff's husband are irrelevant and should be stricken**

Defendant argues that the statements regarding plaintiff's husband, Skip Standen, are irrelevant and must be stricken pursuant to Federal Rule of Civil Procedure 12(f).  In plaintiff's amended complaint, she claims that Skip Standen was fired in retaliation for her complaints to Human Resources.  She also alleges that Pope made discriminatory statements about plaintiff to Skip Standen.  Defendant asserts that plaintiff's husband is not a party and plaintiff is not entitled to relief based on the statements

made to him that are clearly impertinent.  Plaintiff submits that these statements are relevant.

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED.R.CIV.P. 12(f).  "Indeed, striking a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice' and should be used 'sparingly.'  The Court has 'considerable discretion' in disposing of a motion to strike under Rule 12(f)."  DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (citations omitted).

We find that the statements allegedly made about plaintiff to Skip Standen or the allegations relating to Skip Standen's termination are not redundant, immaterial, impertinent or scandalous.  The allegations are related to plaintiff's sexual harassment and retaliation claims.  As striking a pleading is a drastic remedy and in light of the statements relevance to plaintiff's claims, we will deny defendant's motion to strike the statements.

## 6.  Plaintiff's claim for punitive damages should be dismissed

Defendant argues that plaintiff failed to pled sufficient facts to support a claim for punitive damages under Title VII.[6]  Plaintiff asserts that it is premature for this court to dismiss plaintiff's claim for punitive damages.

Under federal law, a plaintiff may be entitled to recover punitive damages for discrimination if she can establish that a defendant intentionally discriminated with malice or reckless indifference to her

---

[6]  The parties stipulated to the dismissal of plaintiff's PHRA claim, therefore we will not address their arguments under that statute as to punitive damages.  (Doc. 29, Tr. at 14-15).  Furthermore, plaintiff did not request punitive damages under her PHRA claim.

federally protected rights.  <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 534 (1999).  "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."  <u>Id.</u> at 536.

At this stage in the instant case, we must take all the allegations as true and view them in a light most favorable to plaintiff.  Accordingly, we find that plaintiff has alleged sufficient allegations to state a plausible claim for punitive damages.  We will deny defendant's motion as to punitive damages.

**Conclusion**

For the reasons stated above, we will grant in part and deny in part defendant's motion to dismiss.  The motion will be granted as to plaintiff's PHRA claim.  The motion will be denied in all other respects.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL A. STANDEN,<br>　　　Plaintiff | **:**　　No. 3:11cv1988<br>**:**<br>**:**　　**(Judge Munley)** |
| 　　v. | **:**<br>**:** |
| GERTRUDE HAWK CHOCOLATES, INC.,<br>　　　Defendant | **:**<br>**:** |

## ORDER

　　**AND NOW**, to wit, this 10th day of August 2012, Defendant Gertrude Hawk Chocolates, Inc.'s motion to dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** as to plaintiff's Pennsylvania Human Relation Act claim.  In all other respects, defendant's motion is **DENIED**.

　　　　　　　　　　　　　BY THE COURT:


　　　　　　　　　　　　　**s/ James M. Munley**

　　　　　　　　　　　　　**JUDGE JAMES M. MUNLEY
　　　　　　　　　　　　　United States District Court**