IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. STANDEN,<br>          Plaintiff<br><br>    v.<br><br>GERTRUDE HAWK CHOCOLATES, INC.,<br>          Defendant | : No. 3:11cv1988<br>:<br>: (Judge Munley)<br>:<br>:<br>:<br>: |

## MEMORANDUM

Before the court is defendant's motion for summary judgment. (Doc. 45). The motion is fully briefed and ripe for disposition.

## BACKGROUND

This Title VII sexual harassment hostile work environment claim arises from Plaintiff Carol A. Standen's (hereinafter "Standen") employment with Defendant Gertrude Hawk Chocolates, Inc. (hereinafter "defendant").[1]

Standen began working for the defendant in 1992 as a Candy Packer. (Doc. 46-1,Def.'s Statement of Material Facts (hereinafter "SOF") ¶ 1; Doc. 46, Ex. A, Dep. of Carol Standen (hereinafter "Standen Dep.") at 13). In 1993 or 1994, defendant promoted Standen to the position of Packaging Technician. (Standen Dep. at 13-14). Standen continued

---

[1] Standen voluntarily withdraws her Title VII retaliation claim against the defendant. (Doc. 51, Pl.'s Br. in Opp'n at 2). Accordingly, defendant's motion for summary judgment on this issue will be granted as unopposed.

working as a Packaging Technician until 2008 when she took FMLA leave for eight (8) weeks. (SOF ¶ 53). While out on FMLA leave, Standen resigned from her position. (Id. ¶ 54).

Prior to resigning in November 2008, Standen claims that from 2002 through 2008 she had been the victim of sexual harassment, numerous unwelcome and unwanted physical touchings and was subjected to a severe and pervasive sexually hostile work environment. (Id. ¶ 7; Standen Dep. at 15). Specifically, Standen testified that three male employees sexually harassed her: (1) David Black (hereinafter "Black"); (2) Phil Calachino (hereinafter "Calachino") and (3) Jim Pope (hereinafter "Pope").

Black and Pope worked with Standen. (Doc. 46-4, Ex. C, Dep. of David Black (hereinafter "Black Dep.") at 5-6; Doc. 46-5, Ex. D, Dep. of James Pope (hereinafter "Pope Dep.") at 5, 17). Calachino was their supervisor. (Doc. 46-3, Ex. B, Dep. of Phillip Calachino (hereinafter "Calachino Dep.") at 5-6). Calachino, Black and Pope deny sexually harassing Standen. (Calachino Dep. at 8-9, 25, 33, 41; Black Dep. at 9; Pope Dep. at 17).

Standen further alleges that she filed numerous complaints with her supervisors up to and including defendant's Chief Executive Officer, David

Hawk. (SOF ¶ 8). Specifically, Standen provided a "last chance" complaint to Hawk on November 11, 2008. (Id. ¶ 9).

Standen also repeatedly registered verbal complaints of sexual harassment with Human Resources Manager David Garton (hereinafter "Garton"), on the following dates: early Easter 2004; October 20, 2004; March 24, 2005; July 15, 2005; November 15, 2005; February 6, 2006; June 30, 2008; August 25, 2008; September 3, 2008; November 3, 2008 and November 11, 2008. (Standen Dep. at 25, 27-28; Standen's Resp. to Def.'s Interrog. (hereinafter "Standen's Interrog. Resp.") ¶ 3(e)). Further, Standen complained of sexual harassment to Calachino on: March 23, 2005; February 2006; early Easter 2006; September 4, 2008 and November 11, 2008. (Standen's Interrog. Resp. ¶ 3(f)). The defendant, however, never took any corrective action. (Standen Dep. at 23-24, 29, 35; Standen's Interrog Resp. ¶¶ 22-23).

In response, Standen filed the instant lawsuit on October 25, 2011, (Doc. 1) and an Amended Complaint on February 21, 2012 (Doc. 12). In her Amended Complaint, Standen alleged claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (hereinafter "Title VII") and the Pennsylvania Human Relations Act (hereinafter "PHRA"). The court

3

dismissed Standen's PHRA claim in its motion to dismiss order. The court allowed Standen's Title VII sexual harassment hostile work environment and retaliation claims to proceed. At the conclusion of discovery, the defendant filed the instant motion for summary judgment. (Doc. 45). The parties then briefed the issues bringing the case to its present posture.

**JURISDICTION**

Because this case is brought pursuant to Title VII, 42 U.S.C. § 2000e-2(a)(1), the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**LEGAL STANDARD**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting Fed. R. Civ. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248. A fact is material if it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts within affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. <u>Id.</u> at 324.

**DISCUSSION**

Standen brings a sexual harassment hostile work environment claim pursuant to Title VII. Under Title VII, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

Defendant moves for summary judgment on Standen's Title VII hostile work environment claim arguing Standen failed to file a timely EEOC charge within 300 days of the last discriminatory act. Alternatively, defendant avers that the absence of a genuine issue of material fact pertaining to this hostile work environment claim compels judgment as a matter of law in their favor. Standen, on the other hand, alleges that she timely filed an EEOC charge and that genuine issues of material fact preclude summary judgment. The court will first address Standen's hostile work environment claim, and if necessary, discuss defendant's statute of limitations argument.

**A. Hostile Work Environment**

Defendant contends that the absence of a genuine issue of material fact regarding Standen's Title VII sexual harassment claim compels judgment in their favor.  Title VII prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  Hostile work environment claims require a plaintiff to establish five elements: (1) the discrimination was intentional and because of the plaintiff's sex; (2) the discrimination against plaintiff was severe or pervasive; (3) the discrimination had a subjective detrimental effect on the plaintiff; (4) the discrimination was objectively detrimental; and (5) respondeat superior liability. Mandel, 706 F.3d at 167 (citing Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006)). The initial four elements speak to the existence of a hostile work environment, while the fifth element is determinative of employer liability. Mandel, 706 F.3d at 167 (citing Huston, 568 F.3d 100, 104 (3d Cir. 2009). The court will address each element in turn.

**1. Intentional discrimination based on sex**

Standen must first establish that she suffered from intentional discrimination because of her sex.[2]  In order to satisfy this requirement, Standen must demonstrate that sex was a substantial factor in the alleged harassment and that if she were a male, she would not have been treated in the same manner.  Andrews v. City of Phila., 895 F.2d 1469, 1485 (3d Cir.1990); see also Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 278 (3d Cir. 2001) (stating that a plaintiff need not show direct evidence of the harasser's motivation or intent . . . .  Rather, intent to discriminate can be inferred from the record.).

Here, Standen testified that Calachino, Black and Pope subjected her to a barrage of sexually charged comments, innuendos, propositions and gestures.  Specifically, in 2007 Calachino stated, "I'll have you cum before you get your pants off" when asking Standen to meet him after work.  (Standen Dep. at 64-65; Standen's Interrog. Resp. ¶ 24(i)).  In 2008, Calachino grabbed Standen around her neck, choked her, and said "I know you like it rough," which caused Standen to urinate in her pants.

---

[2]  The court recognizes the sensitive and intimately personal nature of sexual harassment cases.  Because we find it necessary to intelligently discuss the present case, a graphic description of events is, unfortunately, required.

(Standen Dep. at 68; Standen's Interrog. Resp. ¶ 24(m)). Calachino also summoned Standen into an office and stated, "Hey! we got your Christmas present!" whereby he held up a vibrating tool and thrust it towards Standen's genitals. (Standen Dep. at 56-57).

Additionally, Standen testified that Black would routinely come up from behind her, lean in and smell her in a sexual fashion while pushing his groin into her. (Id. at 15). Black's sexually suggestive sniffing was so recurrent that Pope nicknamed him "the sniffer." (Id. at 21).

Finally, on numerous occasions from 2004 until 2008, Pope demanded Standen walk ahead of him to admire her physique while making sexually suggestive remarks pertaining to her buttocks. (Doc. 51-7, Aff. of Carol Standen (hereinafter "Standen Aff.") ¶ 1; Standen's Interrog. Resp. ¶ 24(o)). Further, on November 6, 2008, Standen stated that she ran into Pope in the stairwell. When Standen confronted Pope and asked him if his goal was to get her fired, Pope replied, "I just like fucking with you, why would I want to get you fired? I would miss watching that ass of yours!" (Standen Aff. ¶ 2). Viewing this evidence in the light most favorable to Standen, a reasonable jury could conclude that the alleged harassment was based on her sex.

**2. Severe or pervasive discrimination**

Standen must next demonstrate that the discrimination was severe or pervasive. To determine if harassment is severe and pervasive the totality of the circumstances must be examined, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Mandel, 706 F.3d at 168 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); see also Caver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005) (stating that "a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

Based on Standen's deposition testimony, affidavit and responses to defendant's interrogatories, some of which is described above, the court finds that Standen has submitted sufficient evidence that could support a jury finding that she suffered from a hostile work environment. (See Standen Dep. at 15, 21-24, 28, 35-37, 56-57, 61-62, 65-68, & 73; Standen's Interrog. Resp. ¶¶ 3, 21-24; Standen Aff. ¶¶ 1-2). Standen testified that these incidents occurred from 2002 until November 2008 and involved similar conduct by the same individuals suggesting a persistent,

ongoing pattern. (Standen Dep. at 15). Ergo, a reasonable jury could conclude that the discrimination was severe or pervasive.

### 3. Detrimentally affected

The third and fourth elements require Standen to establish that the sexual discrimination detrimentally affected her and that it would detrimentally affect a reasonable person in like circumstances. Mandel, 706 F.3d at 167. While psychological harm is not required, "[t]he effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive." Harris, 510 U.S. at 23.

Here, Standen testified that the sexually hostile work environment caused her psychological distress stating:

> Going to work everyday was like hell, and I had no choice, I had to go. That's the only thing I knew how to do, it's the only thing that paid me the amount of money it paid me, and it's all I knew. I was–literally my hands were tied. I had to go.
> So to deal with this on a daily basis, I mean, I didn't want to do it, I had to do it, to the point where I literally got sick every morning before I'd go to work.
> They twisted and turned everything. I became the bad guy, I became the liar. Nothing I did was right. I was continually being harassed, sexually harassed and harassed, by Jim Pope, Dave Black and then my boss, Phil Calachino, which made it even worse. . . .

> Nobody wanted to help me, nobody wanted to fix anything, nobody believed anything I said. I turned into the villain. So the job I absolutely loved for almost seventeen years, turned into my living hell.

(Standen Dep at 42-43).

Standen also testified that she was actively treating for depression and anxiety, and that she attempted to take her own life. (Id. at 42). Moreover, Standen testified that the atmosphere in defendant's factory was that of a "boy's club," such that "things would go on constantly," and "they denied everything they did," and that the men in the shop "were like untouchable." (Id. at 17).

If proven to be true, a reasonable jury could infer that Calachino, Black and Pope's intentional actions created an environment conducive to securing, maintaining and wielding power and control over Standen against her will. See Mandel, 706 F.3d at 169 (stating that the "inherently subjective question of whether particular conduct was unwelcome presents difficult problems of proof and turns on credibility determinations," which can preclude summary judgment).

The jury could likewise infer that a reasonable person would not want to be relegated to a life of perpetual worry and anxiety pertaining to a work environment in which their inherent human dignity was continually

assailed with each act of sexual harassment. Accordingly, viewing this evidence in the light most favorable to Standen, a reasonable jury could conclude that the alleged incidents detrimentally affected Standen and that these same incidents might detrimentally affect an objective reasonable person in Standen's place.

### 4. Respondeat superior

The final hostile work environment element is respondeat superior. The Third Circuit Court of Appeals has stated that "liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews, 895 F.2d 1469 (citation omitted). Thus, "if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the employer will be liable."[3] Id. (citation omitted).

In the instant case, Defendant's employee handbook provides that an employee, "must report such harassment or discrimination to the HR Director or Manager or VP of Operations." (Doc. 51-2, Ex. B, Def. Emp.

---

[3] Management level employees are sufficiently senior in the employer's governing hierarchy, or otherwise in a position of administrative responsibility over employees under him. Huston, 568 F.3d at 107.

Handbook at 28-29).  Standen followed, and arguably exceeded, her obligation to report sexual harassment.  Standen complained of sexual harassment to David Hawk, Owner and Chief Executive Officer, on November 11, 2008.  (Standen's Interrog Resp. ¶ 3(c)).  Standen also stated that she repeatedly registered verbal complaints of sexual harassment with her supervisor, Garton, on the following dates: early Easter 2004; October 20, 2004; March 24, 2005; July 15, 2005; November 15, 2005; February 6, 2006; June 30, 2008; August 25, 2008; September 3, 2008; November 3, 2008 and November 11, 2008.  (Standen Dep. at 25, 27-28; Standen's Interrog Resp. ¶ 3(e)).  Further, Standen complained of sexual harassment to Calachino on: March 23, 2005; February 2006; early Easter 2006; September 4, 2008 and November 11, 2008.  (Standen's Interrog Resp. ¶ 3(f)).  The defendant, however, never took any corrective action.  (Standen Dep. at 23-24, 29, 35; Standen's Interrog Resp. ¶¶ 22-23).

This evidence, if proven to be true, would be sufficient for respondeat superior liability to attach because the defendant "knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  Huston, 568 F.3d at 104.  Thus, a

reasonable jury could conclude that Standen has established a prima facie hostile work environment claim. As such, defendant's motion for summary judgment regarding Standen's Title VII sexual harassment claim will be denied.

## B. Statute of Limitations

Defendant next contends that the undisputed facts establish that the last act of discrimination occurred outside Title VII's statute of limitations. To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice.[4] 42 U.S.C. § 2000e-5(e)(1); Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013).

Standen asserts that her EEOC charge is timely pursuant to the continuing violation doctrine. Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim. Mandel, 706 F.3d at 165. These acts "can occur at any time so long as they are linked in a pattern

---

[4] A discrimination charge must be filed with the EEOC within 180 days after the last alleged unlawful employment practice, or if cross-filing with a parallel state agency, 300 days from the last unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). Pennsylvania has such a state agency and is thus deemed a deferral state. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000).

of actions which continues into the applicable limitations period." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002) (explaining that a court may consider the "entire scope of a hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period")); see also West v. Phila. Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995) (stating that a plaintiff must establish that at least one act occurred within the filing period and that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination"). Stated differently, the court must determine whether the violations constitute the same type of discrimination and that at least one act falls within the applicable limitations period.

    Initially, Calachino, Black and Pope argue that they never sexually harassed Standen. (Calachino Dep. at 8-9, 25, 33, 41; Black Dep. at 9; Pope Dep. at 17). As such, the burden shifts to Standen, who must go beyond her pleadings, and designate specific facts within affidavits, depositions, admissions, or answers to interrogatories demonstrating the existence of a genuine issue for trial. Celotex at 324.

Here, as discussed above, Standen goes beyond her pleadings and designates several disputed facts pertaining to her hostile work environment claim.  (See Doc. 24-1, Pl.'s EEOC charge (hereinafter "EEOC charge") at 1-2; Standen Dep. at 15, 21-24, 28, 35-37, 56-57, 61-62, 65-68, & 73; Standen's Interrog. Resp. ¶¶ 3, 21-24).  Standen also avers that these incidents occurred from 2002 until November 2008 and involved similar conduct by the same individuals suggesting a persistent, ongoing pattern.  (Standen Dep. at 15).  Therefore, Standen has affirmatively established a genuine issue for trial regarding her allegations of sexual discrimination.

The court next addresses whether at least one act falls within the applicable limitations period.  Standen asserts that the last incidents of harassment occurred in November 2008.  (EEOC charge at 1).  On November 6, 2008, Standen states that she ran into Pope in the stairwell. When Standen confronted Pope and asked him if his goal was to get her fired, Pope replied, "I just like fucking with you, why would I want to get you fired?  I would miss watching that ass of yours!"  (Standen Aff. ¶ 2).

Additionally, on November 11, 2008, Standen was called into Garton's office to discuss her allegations of sexual harassment earlier in

the day to Dave Hawk.  (Standen Dep. at 35-36).  Shortly after her arrival, Calachino walked in and "took the roof off the place.  He starts screaming, ranting and raving, she's fucking nuts, she's a head job, she's having hot flashes . . . .  He must have berated me for at least a minute and a half, screaming at the top of his lungs."  (Id.)  Standen further testified that Garton never tried to stop Calachino's rant.  (Id.)  Garton "just let [Calachino] go on and on."  (Id.)

Viewing the facts in the light most favorable to Standen and drawing all inferences in her favor, the court finds that a reasonable jury could find by a preponderance of the evidence that Pope and Calachino's statements in November 2008 may relate to Standen's hostile work environment claim.  To the extent that such behavior could be seen to constitute sexual harassment, these incidents were part of a pattern that makes up the same unlawful employment practice.

Three hundred days from November 11, 2008 is September 7, 2009. The EEOC received Standen's discrimination charge on August 31, 2009. (EEOC charge at 1).  As such, the court finds that Standen timely filed her EEOC complaint.  Accordingly, the court will deny defendant's motion for

summary judgment on the ground that the applicable statute of limitations precludes Standen's hostile work environment claim.

## C.  Punitive Damages

Standen also seeks punitive damages.  As a general rule, punitive damages are "reserved for special circumstances when the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Feldman v. Phila. Hous. Auth., 43 F.3d 823, 842 (3d Cir. 1994) (citation omitted).  In Title VII cases, punitive damages are limited "to cases in which the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 529 (1999) (citing 42 U.S.C. § 1981A(b)(1)); Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 79 n.2 (3d Cir. 2009).

After reviewing the record, the court finds that a reasonable jury could conclude that Standen has demonstrated that the defendant subjected her to a hostile work environment, that the defendant was aware of the hostile environment and failed to take any remedial response. Moreover, the existence of genuine issues of material fact pertaining to

defendant's good-faith efforts to comply with Title VII preclude entering judgment as a matter of law on plaintiff's punitive damages claim. (See Calachino Dep. at 5; Black Dep. at 9-10; Pope Dep. at 5-8, 17; Standen's Interrog Resp. ¶¶ 3, 24). As such, defendant's summary judgment motion pertaining to punitive damages will be denied.

**CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment will be granted in part and denied in part. The motion will be granted as unopposed with respect to Count II–Title VII retaliation. The court will deny the motion in all other respects. As such, the only pending claim is Count I–Title VII sexual harassment hostile work environment from 2002 through 2008. An appropriate order follows.


**Date:   2/19/14**                                    **s/ James M. Munley**
                                                       **JUDGE JAMES M. MUNLEY**
                                                       **United States District Court**